F I L E D
United States Court of Appeals
Tenth Circuit

JAN 24 2002

PATRICK FISHER
Clerk

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

FLOR CABALLERO,

      Defendant - Appellant.

No. 00-4201

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LEONARDO RAMON CABALLERO,
also known as Leo Caballero, also
known as Leo Cavallero, also known
as Leonardo Caeallero,

      Defendant - Appellant.

No. 00-4203

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. Nos. 99-CR-400-02-S and 99-CR-400-01-ST)

Scott J. Thorley, Assistant United States Attorney (Paul M. Warner, United States Attorney, District of Utah, Michele Christiansen and Diana Hagen, Assistant United States Attorneys, with him on brief), Salt Lake City, Utah, for Plaintiff-Appellee.

L. Clark Donaldson, Salt Lake City, Utah, for Defendant-Appellant Flor Caballero.

Todd Andrew Utzinger, Utzinger & Peretta, Salt Lake City, Utah, for Defendant-Appellant Leonardo Ramon Caballero.

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

Following a jury trial, Defendants-Appellants Leonardo and Flor Caballero were convicted of conspiracy in violation of 18 U.S.C. §§ 2, 371, mail fraud in violation of 18 U.S.C. §§ 2, 1341, wire fraud in violation of 18 U.S.C. §§ 2, 1343, and interstate transportation of a victim of a scheme to defraud in violation of 18 U.S.C. §§ 2, 2314.[1] The district court sentenced Mr. and Mrs. Caballero to terms of imprisonment of 120 months and 78 months respectively, each followed by three years' of supervised release. Because the cases involve similar facts and defendants raise many of the same arguments on appeal, we granted the defendants' motion to consolidate and they have filed a joint brief. The

---

[1] The Caballeros were charged in a 34-count second superseding indictment charging conspiracy (Count 1); wire fraud (Counts 2-9); mail fraud (Counts 10-21), and interstate transportation of a victim of a scheme to defraud (Counts 22-34). IV R. Doc. 214. During the course of trial, the district court dismissed various counts and the jury convicted the Caballeros on all remaining counts: conspiracy (Count 1); five counts of wire fraud (Counts 2, 3, 4, 5 & 8), nine counts of mail fraud (Counts 10, 13-17 & 19-21) and ten counts of interstate transportation of a victim of a scheme to defraud (Counts 22-32).

Caballeros raise numerous issues on appeal, the bulk of which fall under the umbrella of prosecutorial misconduct. Specifically, they allege that the government 1) knowingly deported a witness with potentially exculpatory information, 2) introduced evidence at variance with the indictment, 3) knowingly elicited false testimony from a government witness, 4) improperly referred to evidence previously ruled inadmissible, 5) attempted to elicit improper character evidence, 6) failed to provide timely reports and summaries of expert testimony, and 7) made an assortment of other comments that defendants claim constitute a pattern of misconduct. The Caballeros argue that even if no single instance of alleged misconduct warrants reversal of their convictions, cumulative error does. Finally, the Caballeros argue that their immigrant victims were not "vulnerable victims," and that the district court erred when it applied a four-step "vulnerable victims" sentence enhancement.

### Background

Appellants Leonardo and Flor Caballero, husband and wife, owned and operated a business, Caballeros, Inc., from their home and various office sites in Florida. Between 1996 and 1999, the Caballeros ran an immigration service scheme to defraud immigrants seeking permanent legal residence in the United States. Through "referral agents" scattered across the nation, the Caballeros

promised the victims immigration and legal expertise, government connections, expedited processing, and, ultimately, receipt of legal residency papers–most commonly "green cards." The Caballeros instructed their "clients" to undergo medical testing, background screening, and travel to Miami for interviews–all at the victims' significant personal expense. Meanwhile, the Caballeros collected fees for their "services" rendered and the clients never received the promised papers. At this point, the Caballeros would become inaccessible. Clients, most of whom were in the United States illegally, who tried to contact Caballeros, Inc., received, at best, a litany of excuses and imaginary reasons for the delay, and at worst, no answer at all.

The government outlined the Caballeros' scheme over the course of a two and a half week trial. The strong case against the Caballeros rested in part on sixteen victim-witnesses, incriminating statements made by Mr. Caballero to various law enforcement officials, client records, and financial documents recovered from Caballeros, Inc.

## I. Prosecutorial Misconduct

The common theme in the majority of the Caballeros' claims on appeal is that prosecutors engaged in misconduct that violated not only the professional duties of their office, but also the defendants' right to due process. The Caballeros claim that individually and in sum, these violations require reversal of

their convictions.

A.  The Deportation of Manuel Silva

The Caballeros contend that their indictment should be dismissed because the government deprived them of material exculpatory evidence when it deported Manuel Feliciano Silva in February 1999.

The Sixth Amendment guarantees a criminal defendant "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. In United States v. Valenzuela-Bernal, 458 U.S. 858 (1982), the United States Supreme Court held that when a witness has been deported prior to a criminal trial, the defendant can demonstrate a denial of the right to due process and compulsory process if he makes "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." 458 U.S. at 873. Further, "sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Id. at 873-74. To obtain an order dismissing their indictment, the Caballeros must show more than "the mere potential for favorable testimony." United States v. Iribe-Perez, 129 F.3d 1167, 1173 (10th Cir. 1997). It is not enough that the Caballeros merely point to any conceivable benefit from Silva's testimony. Valenzuela-Bernal, 458 U.S. at 867. They must instead

describe a benefit so great, its absence affected the outcome of the trial.

But the Caballeros only allege that by examining Silva, they could have shown jurors that Silva was a "polished con artist with a long history of...swindling strangers...[and] duping and deceiving innocent business partners." Aplts. Reply Br. at 3. The Caballeros contend that a firsthand assessment of Silva's "demeanor and character" would have lead jurors to conclude that Silva was the criminal mastermind who duped the Caballeros into participating in his criminal schemes. Id.

Beyond this, the Caballeros offer no inkling of exonerating facts that Silva's testimony might have unearthed. Even assuming Silva made the unlikely decision not to invoke his Fifth Amendment privilege and remain silent, nothing in his potential testimony as described would reduce the culpability of the Caballeros. We acknowledge the difficulty in describing would-be testimony of absent witnesses, but the required showing is not eliminated entirely just because the Caballeros lacked access to Silva. Though we do not require detailed descriptions of what has been lost, the Caballeros must still make a "plausible showing" that the lost testimony was material and favorable. Valenzuela-Bernal, 458 U.S. at 873. While the Caballeros suggest some vague benefit from Mr. Silva's presence on the stand, they offer no adequate "explanation of how [Silva's] testimony would have been favorable and material." Id. at 872.

Even assuming arguendo that Silva's testimony would have supported the Caballeros' defense that they were Silva's unwitting dupes, the testimony would not have been material in light of the substantial evidence of the Caballeros' guilt, including the victim-witness accounts, self-incriminating statements, and business records that indicated their firsthand knowledge of the scope and nature of the criminal operation.

In addition to materiality, defendants must demonstrate governmental bad faith in order to obtain an order dismissing their indictment. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Iribe-Perez, 129 F.3d at 1173. The Caballeros' failure to show the materiality of Silva's lost testimony absolves us of examining the bad faith prong. Iribe-Perez, 129 F.3d at 1173. Nonetheless, a review of the entire record reveals no evidence that would even suggest bad faith.

B. Variance from the Indictment

The Caballeros allege that the testimony of Merce Gutierrez regarding the defendants' involvement in prior bad acts constituted a fatal variance between the evidence and the indictment. At trial, Ms. Gutierrez, without objection, described events that varied in time, place, and persons involved from the crimes alleged in the indictment. Specifically, she testified to events that took place in 1994 and 1995, before the period of the conspiracy described in the indictment. These events also occurred at the Caballero home rather than the places of business

alleged in the indictment and involved other participants not mentioned in the indictment.  Id.  Despite finding a potential variance, the court denied a motion for a mistrial, determining any prejudice to the rights of the defendants was cured when the court struck Gutierrez's testimony and instructed the jury to disregard it.

We first note that this issue comes to us in the form of a motion for a mistrial, as opposed to an objection based on prosecutorial misconduct.  Contrary to  a suggestion at oral argument that moving for a mistrial and objecting to a prosecutorial impropriety result in the same standard of review, our precedent clearly distinguishes between them.  A trial court may appropriately grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired; a decision we review for an abuse of discretion.  United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996).  However, an allegation of prosecutorial misconduct for which there was a contemporaneous objection presents a mixed question of fact and law that we review *de novo*.  Gabaldon, 91 F.3d at 94.  We review the district court's decision in this case to deny the motion for a mistrial for abuse of discretion.  Id.

A variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment, United States v. Ailsworth, 138 F.3d 843, 848 (10th Cir. 1998), and denigrates the Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.

Variance between the indictment and the proof is fatal and warrants overturning a criminal conviction only upon a showing of substantial prejudice. Id. at 849. A defendant is substantially prejudiced in his defense either because he cannot anticipate from the indictment what evidence will be presented against him, or because the defendant is exposed to the risk of double jeopardy. Ailsworth, 138 F.3d at 849. Determining whether the variance affected the Caballeros' substantial rights or whether it constituted harmless error requires us to examine the trial record as a whole. Kotteakos v. United States, 328 U.S. 750, 764-65 (1946).

First, what the Caballeros term a variance problem is no different than the many instances where evidence is introduced and later stricken by the court with directions that the jury disregard it. A true variance problem by contrast typically arises when objectionable evidence that materially differs from the charge described in the indictment goes unimpeded to the jury and is considered during its deliberations. See e.g., Kotteakos, 328 U.S. 750. The Caballeros present a situation that more closely resembles instances in which a court dismisses one count of an indictment following the close of the government's case-in-chief, perhaps as an incident to a partial grant of a judgment of acquittal, and then the trial proceeds on the remaining counts. A judgment of acquittal on some of the counts of an indictment in the middle of the trial does not give rise to a right to a

new trial.  Schaffer v. United States, 362 U.S. 511, 516 (1960).

Most significantly, the cautionary instructions administered by the court to the jury were clear and concise and pertained to testimonial evidence from a single witness that was amenable to easy segregation in the minds of the jury. Jury instructions such as those given in this case are ordinarily sufficient to cure the alleged prejudice.  United States v. Sanders, 929 F.2d 1466, 1470 (10th Cir. 1991).  We presume that jurors will follow clear instructions to disregard evidence "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."  Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (citations omitted); United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998).  We find that the district court did not abuse its discretion in finding no substantial prejudice caused by the claimed variance and in denying the motion for a mistrial.

C.  Alleged False Testimony by Government Witness

The Caballeros next claim that the prosecutor knowingly sought and used perjured testimony from government witness Jorge Avila.  A prosecutor who knowingly presents false evidence violates due process, regardless of whether the evidence is relevant to substantive issues or to witness credibility only.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  In order to establish a due process violation,

the Caballeros must show that (1) Avila's testimony was in fact false, (2) the prosecution knew it to be false, and (3) the testimony was material. Because the Caballeros failed to make contemporaneous objections at the time of Avila's testimony, we review this particular claim of prosecutorial misconduct for plain error. United States v. Gonzalez-Montoya, 161 F.3d 643, 650 (10th Cir. 1998).

The Caballeros claim that during direct examination, the prosecutor elicited a duplicitous explanation of Avila's earlier firearm convictions. Mr. Avila claimed that firearms were necessary for protection in his legitimate jewelry business. On cross-examination, Mr. Avila admitted that in one instance, he possessed not only the firearm, but also a silencer, and explained that he used this device to shoot neighborhood cats without disturbing the neighbors. Avila then also admitted that he had been charged, though not convicted, of possession of cocaine "at this same time."

The Caballeros offer no evidence that Avila's testimony, either on direct or cross-examination, was false. Avila's remarks about the silencer and the cocaine charge are not inconsistent with, let alone contradict, his testimony on direct examination. The Caballeros also fail to show the prosecutor knew that Avila's testimony was false. Even postulating tension between Avila's responses on direct and cross, such inconsistency alone does not establish the knowing use of perjured testimony. Tapia v. Tansy, 926 F.2d 1554, 1563 (10th Cir. 1991).

Because of the absolute lack of evidence to show either the falsity of Avila's testimony or the prosecutor's knowledge of false testimony, we need not examine the third factor – the materiality of the perjured testimony. We note, however, that Avila's cross-examination testimony regarding the silencer and the cocaine charge likely renders immaterial the omission of the same facts on direct examination. United States v. Langston, 970 F.2d 692, 700-01 (10th Cir. 1992). The Caballeros have not shown that admission of Avila's testimony amounted to plain error.

D. Prosecutorial Reference to Inadmissible Evidence

During the cross-examination of government witness Jorge Avila, defense counsel asked Avila about a prior criminal charge for possession of cocaine. The prosecution objected, stating in the presence of the jury, "Your Honor, we object to this unless discussions about cocaine go both ways." XVIII R. at 656. The Caballeros contend that the comment violated the court's tentative ruling excluding evidence of Leonardo Caballero's prior cocaine conviction, and that the district court abused its discretion when it refused to grant a mistrial in response. We review the denial of a motion for a mistrial for an abuse of discretion. Gabaldon, 91 F.3d at 94.

To determine whether an improper reference to a defendant's prior conviction requires declaring a mistrial, we consider "what effect the error had or

- 12 -

reasonably may be taken to have had upon the jury's decision...[and whether it had substantial influence." Kotteakos, 328 U.S. at 764-65. We estimate the influence on the jury in the context of all the evidence presented against the Caballeros. United States v. Williams, 923 F.2d 1397, 1401 (10th Cir. 1990). In United States v. Short, 947 F.2d 1445 (10th Cir. 1991), a prosecutor explicitly asked the defendant about a prior drug-related conviction, despite a trial court ruling barring such evidence. 947 F.2d at 1455. In reviewing the denial of a motion for mistrial, this court examined whether the prosecutor's comment substantially influenced the jury's verdict. Id. In view of the overwhelming evidence of the defendant's guilt, the solitary, isolated nature of the prosecutor's remark, and the defense counsel's decision not to seek a limiting instruction or have the statement stricken, we decided that the remark did not substantially influence the verdict. Id.

While we certainly do not condone the prosecutor's inappropriate suggestion in this case that "discussions about cocaine go both ways," the comment was ambiguous and, at best, merely suggestive and revealed less than did the explicit, conclusive questioning of the prosecutor in Short. Second, we find it unlikely that the prosecutor's single, ambiguous remark substantially influenced the jury in light of the overwhelming evidence presented against the Caballeros. Furthermore, the question asked in Short elicited the defendant's

admission to a prior conviction.  Here, there was a single remark, directed to the court, and no reply was given.  Third, as in Short, the Caballeros' defense counsel did not ask the court to strike the offending remark or issue a limiting jury instruction, though both the prosecution and the court suggested such a course.  In summary, the district court did not abuse its discretion in denying the motion for a mistrial in the wake of the prosecutor's comment.

E.  Elicitation of Improper Character Evidence

The Caballeros contend that the prosecutor elicited improper testimony regarding Flor Caballero's personality and demeanor.  In the first instance cited by the Caballeros, the court sustained objections to the government's questions about Ms. Caballero's personality and about her behavior towards clients.  Regardless of the appropriateness of the questioning, these unanswered questions do not amount to prosecutorial misconduct.  We review allegations of prosecutorial misconduct de novo.  Gabaldon, 91 F.3d at 94.  In examining claims of prosecutorial misconduct, we have held that reversal is required only if there is reason to believe it influenced the jury's verdict.  United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996).  Thus, "[a]bsent a showing of prejudice to the defendant, prosecutorial misconduct alone will not support a finding that the trial court abused its discretion." United States v. Novak, 918 F.2d 107, 110 (10th Cir. 1990) (citation omitted).  The prosecutor's questions, objected to by the defense,

- 14 -

stricken by the court, and unanswered by the witness, did not prejudice the defense.

The prosecutor then asked the same witness about the atmosphere in the Caballeros' office. The defense objected only on the basis that the question had been "asked and answered." The court overruled the objection and the witness responded that "there was [sic] times that Ms. Flor Caballero would come into the office, it was time that our own staff, us together, were saying it's time to go home. There was yelling, screaming, fighting, threats, all kinds. I mean it was a very, very tense place." XVIII R. at 606. In questioning another witness, the prosecutor asked a former Caballero client, Nelva Garcia, about the treatment she received from Flor Caballero. The witness responded that she "didn't feel that [she] was treated professionally [by Ms. Caballero]." XIX R. at 846.

These two exchanges reveal no prosecutorial misconduct. Questions about the Caballeros' office atmosphere and treatment of the witness by Ms. Caballero were marginally relevant to show knowing participation based upon her interaction with clients and employees, and neither question addressed or even clearly invited responses regarding character, reputation, propensity to commit a crime, or otherwise inadmissible evidence. Furthermore, the witnesses' responses did not deal directly with the character of Ms. Caballero. We reject the Caballeros' contention that these questions and answers evince any prosecutorial

misconduct.

Finally, another former client testified to an incident where Ms. Caballeros asked the then-pregnant client not to sit upon a waiting room table. Rather than objecting, the defense moved for a mistrial only at the end of the testimony. The court denied the motion. As noted earlier, we review decisions not to grant a mistrial for abuse of discretion. Gabaldon, 91 F.3d at 93. Again, the prosecutor asked nothing about Ms. Caballero's character and the witness offered these passing remarks during the course of a relevant description of her interaction with the defendant. This exchange does not constitute prosecutorial misconduct, nor was it an abuse of discretion to admit the testimony, especially in the absence of an objection. Finally, in light of the overwhelming evidence of guilt produced at trial and the relatively innocuous nature of the remarks, there exists no reasonable likelihood that the remarks prejudiced the jury, and admitting them did not impair the defendant's right to a fair and impartial trial. Id.

F. Failing to Provide Expert Reports

The Caballeros next contest the designation of government witnesses Allen Speirs, Stephen Back, and Richard Kocak, all employees of the Immigration and Naturalization Service (INS), and Heidi Norman, a financial analyst working for the Federal Bureau of Investigation (FBI), as non-expert lay witnesses.

At a pretrial hearing and in responses to defense requests for discovery, the

government explained that Messrs. Speirs, Back, and Kocak would not testify as experts, but only to basic INS procedures, and that Ms. Norman would summarize the Caballeros' bank accounts, client files, and internal billing records. The court initially agreed that this did not rise to the level of expert testimony, a position the court maintained throughout the trial with respect to all except Mr. Speirs. When called to testify, Speirs described and defined terms and concepts related to his INS work, including, for example, the meaning of certain visa categories and their associated requirements. The court admitted that it was "a close call," but finally concluded that this amounted to expert testimony. Because the government had not complied with the discovery requirements of Federal Rule of Criminal Procedure 16(a)(1)(E)[2], the court excluded the remainder of Speirs's testimony and ordered that the defense be provided with a Rule 16 summary if and when Speirs was used as a rebuttal witness.

The Caballeros claim all four gave expert testimony and that prejudice resulted from the defendants' inability to consult their own experts and adequately prepare for cross-examination of these witnesses. They outline in great detail the importance of providing opposing counsel with timely notice and discovery of planned expert testimony. See Aplts. Br. at 73-77. However, they argue less

---

[2]Rule 16(a)(1)(E) mandates that the government provide a written summary of any expert witness testimony, including: (1) the witness' opinions; (2) the bases and reasons for the opinions; and (3) the qualifications of the experts.

convincingly the threshold question of whether Speirs, Kocak, Back, and Norman were in fact experts to whom the notice and discovery requirements in Rule 16 apply. The government argues that the requirement to qualify these witnesses as experts never arose because they did not give opinion testimony. The Caballeros argue that rendering an opinion is only a factor, not the determining question. Instead, defendants believe that these witnesses should have been designated as experts only because they "presented specialized knowledge, and because their testimony was based on their perceptions, education, training and experience," Reply Br. at 21-22. The Caballeros provide no authority for this proposition. Both cases cited by defendants, United States v. Ortega, 150 F.3d 937 (8th Cir. 1998) and United States v. Figeroa-Lopez, 125 F.3d 1241 (9th Cir. 1997), deal with law enforcement officials offering expert *opinions* while testifying as lay witnesses. 150 F.3d at 943; 125 F.3d at 1245-46.

Both Federal Rules of Evidence 701[3] and 702[4] distinguish between expert

---

[3]Federal Rule of Evidence 701 reads: If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

[4]Federal Rule of Evidence 702 reads, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This rule enables experts to offer opinions and, by its plain language

and lay testimony, not between expert and lay witnesses. Indeed, it is possible for the same witness to provide both lay and expert testimony in a single case. See, e.g., Figueroa-Lopez, 125 F.3d at 1246 (law enforcement agents could testify as lay witness that the defendant was acting suspiciously; however, the rules on experts applied when the agents testified on the basis of extensive experience that the defendant was using code words to refer to drug quantities and prices). Contrary to the Caballeros' suggestion, witnesses need not testify as experts simply because they are experts – the nature and object of their testimony determines whether the procedural protections of Rule 702 apply.

We reject appellants' contentions that Fed. R. Crim. P. 16 (a)(1)(E) was implicated by the challenged testimony. With regard to Kocak, Back, and Speirs, they testified to relevant, readily-understandable INS procedures or operations of which they had firsthand knowledge. Norman summarized business records and client lists and presented them in condensed form, a process clearly permitted by Federal Rule of Evidence 1006. The testimony of all four expressed neither a lay nor an expert opinion, as distinguished from a statement of fact as to what they had witnessed during their respective careers. Furthermore, this testimony was not a surprise to defendants who had been notified of the witnesses and the substance

demands nothing of an expert rendering firsthand testimony.

of their testimony during the pretrial phase. As the challenged testimony proffered no opinion, lay or expert, but simply the witnesses' personal experience relating to a subject bearing directly upon the appropriateness of a jury inference, we reject the claim that the Caballeros were entitled to Rule 16 discovery.

Furthermore, there was no misconduct in the prosecutor's actions. At no time did government actions conflict with the court's rulings regarding these four witnesses.

G. Several Instances of Misconduct

The Caballeros point to an assortment of other examples of "discovery violations, elicited testimony contrary to pretrial rulings, and posed inflammatory questions" that they claim amount to a pattern of prosecutorial misconduct. Aplt. Br. at 90-91. "We engage in a two-step process in reviewing claims of prosecutorial misconduct. First, we determine if the conduct was improper. Second, we determine if any improper conduct warrants reversal." United States v. Gordon, 173 F.3d 761, 769 (10th Cir.) (citation omitted), cert. denied, 528 U.S. 886 (1999). To warrant reversal, prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial" before it will rise to the level of a due process violation. Greer, 483 U.S. at 765 (citation omitted). The offending action must be placed in the context of the whole trial, and not viewed in isolation. Id. at 766. An allegation of prosecutorial misconduct

- 20 -

presents a mixed question of fact and law that we review *de novo*.  Gabaldon, 91

F.3d at 94.

The Caballeros claim prosecutorial misconduct where, several months

before trial, the government provided the defense with a recording of a

conversation between Mr. Caballero and then-undercover FBI agent Carlos Villar.

On the eve of trial, the prosecutors gave the defense a revised transcript and

apprised them of the changes.  Upon reviewing the revisions, defense counsel

objected to the admission of the recording and the transcript, claiming, the newer

version supplied text of the conversation–portions of it incriminating according to

the defense–in parts where the earlier version had indicated only unintelligible

dialogue.  The objections were properly overruled and the conduct complained of

did not constitute misconduct.

Even assuming misconduct, we find that the eleventh hour additions to the

transcript did not prejudice the Caballeros.  First, the Caballeros do not allege

inaccuracies in the revised transcript, only that they were unfairly surprised by the

late additions.  As to the unfair surprise, the Caballeros possessed the actual

recording several months in advance of trial, during which they could have

generated their own transcript.  Further, the court clearly instructed the jury that

the tape, not the transcripts, constituted the actual evidence and the defense aired

their concerns about the revisions during the voir dire and cross-examination of

agent Villar. Perhaps most importantly, the Caballeros never specifically identify which changes caught them unprepared or how such changes prejudiced the jury. They cite "[n]umerous passages...[that] now attributed potentially incriminating statements to Leonardo" and that "[o]ther incriminating comments...were now attributed to Leonardo," Aplt. Br. at 92, without directing us to precise statements. In summary, we find that revising the transcript did not prejudice the defendants.

Second, the Caballeros see prosecutorial misconduct in the late production of documents relating to the testimony of government witnesses Speirs and Kocak. In the first instance, the prosecution sought admission of an INS computer printout supporting Speirs's proposed testimony that the Caballeros provided clients with false identification numbers. The second instance involved documents that showed the INS never employed the Caballeros, intended to be used in conjunction with Kocak's testimony. However, the district court never admitted these documents into evidence, excluding Speirs's testimony and refusing to admit the documents related to Kocak's testimony.

In examining claims of prosecutorial misconduct, reversal is required "only if the improper conduct influenced the verdict." Gordon, 173 F.3d at 769. Thus, "[a]bsent a showing of prejudice to the defendant, prosecutorial misconduct alone will not support a finding that the trial court abused its discretion." United States

v. Maynard, 236 F.3d 601, 606 (10th Cir. 2000) (internal citations omitted). Because the report and documents never reached the jury, we find that regardless of any misconduct, the Caballeros could not have been prejudiced.

Next, defendants cite the prosecutor's questions regarding their vehicles, jewelry, and boat as evidence that the government tried to circumvent a court prohibition against lifestyle evidence. The inquiry concerning the type of vehicles driven by the defendants came before any clear ruling on the admissibility of lifestyle evidence and so no misconduct can be ascribed to the government regarding that question. Similarly, the question regarding the source of the funds to purchase a boat came on cross-examination after the court had approved lifestyle questions on cross-examination, and so again, we find no misconduct. Finally, the question regarding jewelry elicited a response that indeed, Mr. Caballero was wearing a lot of jewelry. Neither the defense objection to the question nor the court ruling sustaining it referred to any prohibition of lifestyle evidence. Even if this was indeed a reference to prohibited lifestyle evidence, we find it to be *de minimis*, and that this single remark could not have prejudiced the defendants. Maynard, 236 F.3d at 606.

The defendants also contend that the prosecutors elicited victim-impact testimony despite the court's prohibition against such evidence. In the capital sentencing context, victim-impact testimony is designed to show each victim's

uniqueness as a human being and enable a jury make a reasoned, moral response to a defendant's conduct. Payne v. Tennessee, 501 U.S. 808, 823-27 (1991); United States v. McVeigh, 153 F.3d 1166, 1216-1222 (10th Cir. 1998). Although victim-impact testimony is usually associated with punishment, the Supreme Court has recognized that some victim-impact testimony is relevant during the guilt phase of a trial because it pertains to what actually occurred. Payne, 501 U.S. at 823, at 840 (Souter, J., concurring). We think the questions at issue are of the latter category. The district court's ruling on this issue allowed such testimony subject to proper foundation, and the district court invited contemporaneous objection: "Feel free to make an objection if you believe they are getting into areas that are purely speculative and are not helpful to the jury and that you believe are prejudicial." XIV R. 346. The court sustained contemporaneous objections and the questions went unanswered. We find no misconduct and no prejudice to the defendants.

Finally, the Caballeros list an assortment of allegedly improper prosecutorial questions. First, the government asked a law enforcement officer whether Feliciano Silva was involved in a scheme together with Mr. Caballero and whether Silva was a "kingpin" in the scheme. The district court sustained an objection that the question went to "the ultimate issue for the jury." Applying the first prong of the test for prosecutorial misconduct, we see no impropriety in this questioning.

Gordon, 173 F.3d at 769. The district court's ruling notwithstanding, testimony regarding Mr. Caballero's involvement in illegal activity, though it may be an opinion that "embraces an ultimate issue to be determined by the trier of fact," is admissible under Federal Rule of Evidence 704. United States v. McSwain, 197 F.3d 472, 483 (10th Cir. 1999) (citation omitted). Since it was certainly arguable that the questions were appropriate, we find no evidence of misconduct. Applying the second prong, the questions went unanswered and therefore caused no prejudice to the Caballeros. Gordon, 173 F.3d at 769.

Finally, after the defense asked one witness whether Mr. Silva was a "con man," the witness replied that "[b]oth of them are." XIII R. at 305. The prosecutor clarified the statement on redirect and the witness agreed that both Silva and Mr. Caballero were con men. In the context of the defense's earlier question, this was an invited response, and we find no prosecutorial misconduct in attempting to clarify the witness's answer. See United States v. Young, 470 U.S. 1, 11 (1985).

H. Cumulative Error

Because we find no error in the district court's rulings challenged by plaintiff, defendants' allegation of cumulative error must fail. "Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." United States v. Rivera, 900 F.2d 1462, 1471

(10th Cir. 1990). Similarly, the Caballeros claim that repeated instances of misconduct amount to "structural error." Because we have decided that the examples of misconduct cited by the Caballeros are baseless, we also find this claim baseless. We would also caution counsel that baseless allegations of prosecutorial misconduct are not helpful to either the defendants or the profession.

II. Admission of Financial Records and Client Lists

The Caballeros appeal the admission of testimony from Heidi Norman, an FBI financial analyst who, using charts and graphs, summarized the Caballeros's client files, billing statements, and bank accounts. The Caballeros contest the admissibility of the evidence in light of its highly prejudicial nature, citing Federal Rule of Evidence 403, and also attack the soundness of Ms. Norman's methodology.

We review the district court's decisions under Federal Rule of Evidence 403 for abuse of discretion. Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1252 (10th Cir. 1992). The records presented by Ms. Norman were highly probative of the Caballeros' involvement in a nationwide fraudulent scheme. We find no abuse of discretion in the court's decision to admit this evidence.

The Caballeros contend that the court failed to adequately explore the basis of Norman's testimony and therefore abdicated its role as gatekeeper under Daubert v. Merril Dow Pharmaceuticals, 509 U.S. 579 (1993). We have already

determined that Norman's testimony did not require her to be qualified as an expert and therefore <u>Daubert</u> is inapplicable.

III.  Application of Sentence Enhancement

The district court applied a two-level sentence enhancement under USSG § 3A1.1(b)(1) for the exploitation of vulnerable victims, and another two-level enhancement under USSG § 3A1.1(b)(2) based on the large number of vulnerable victims.  The Caballeros contend that the trial court erred in applying the enhancements because the court did not make an adequate finding that the victims in this case were "unusually vulnerable."

We review the district court's identification of unusually vulnerable victims for clear error.  <u>United States v. Creech</u>, 913 F.2d 780, 781-82 (10th Cir. 1990).  A vulnerable victim is "a person (A) who is a victim of the offense of conviction and any [relevant] conduct... and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  USSG § 3A1.1, n.2.  We have found application of this enhancement appropriate when "some characteristic renders a victim 'particularly susceptible' to the criminal conduct...[and the victim] is unable to protect himself or herself from criminal conduct..."  <u>United States v. Shumway</u>, 112 F.3d 1413, 1423 (10th Cir. 1997).

The Caballeros claim that the district court looked only to the victims' status

as immigrants and applied the enhancements without making the required particularized findings of vulnerability pertaining to individual victims. United States v. Smith, 133 F.3d 737, 749 (10th Cir. 1997). The Caballeros rely primarily on United States v. Creech, 913 F.2d 780, 781-82 (10th Cir. 1990), a case in which this court reversed a vulnerable-victim enhancement after finding that it had been applied only because of the victim's status as a newlywed. Notably, the defendant in Creech pled guilty, and the district court therefore heard no evidence from the victim, nor any evidence regarding the victim's susceptibility to the criminal conduct. Creech, 913 F.2d at 781. By contrast, the government presented evidence from sixteen victim-witnesses at the Caballeros' trial. In observing the victim-witnesses' testimony, the court gathered facts about their demeanor, language, culture, illegal immigrant status, and uneasiness with the legal system. In its ruling, the court specifically discounted class-based application of the enhancements, saying that "aliens in the United States are not as a class always vulnerable victims within the meaning of the enhancement," but that the "facts of this case that the Court heard at trial, there were a number of victims who were particularly vulnerable and defendants targeted them because defendants knew they were particularly vulnerable." XXIV R. at 173.

Specifically, the court identified the victims' language problems, unfamiliarity with the laws of the United States, the cultures from which the

victims came, and their illegal status as the basis for dubbing them "vulnerable." XXIV R. at 172. Not only must there be particularized evidence of a victim's vulnerability, but the evidence must also distinguish the victim as atypical of the usual targets of the relevant criminal conduct. Creech, 913 F.2d at 782. The court's findings in this case serve to make such a distinction–not every victim of fraud, either generally or in the Caballeros' particular scheme, struggle with the English language, are uneasy dealing with the legal system, or are in an illegal immigrant status. The district court's findings of fact support the vulnerable victim enhancements, are not clearly erroneous, and will not be disturbed. United States v. Smith, 930 F.2d 1450, 1455 (10th Cir. 1991).

AFFIRMED.