**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LUIS ZARATE-NAJERA,

Defendant - Appellant.

No. 07-2152

(D. New Mexico)

(D.C. No. CR-02-1865-MCA)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34 (a)(2); 10th Cir. R. 34.1(G). In its prior Order dated February 28, 2008, this case was therefore ordered submitted without oral argument.

Defendant and appellant, Luis Zarate-Najera, was charged with one count of possession with intent to distribute more than fifty kilos of marijuana, in

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Following a jury trial, Zarate-Najera was found guilty and sentenced to fifty-one months' imprisonment. He appeals the district court's denial of his motion for a mistrial, made during the course of his trial in response to an allegedly prejudicial remark by a government witness. We affirm.

**BACKGROUND**

In the evening of July 23, 2002, Zarate-Najera drove a Chevrolet pickup truck with Texas dealer plates into the United States Border Patrol checkpoint on New Mexico Highway 54, south of Alamogordo, New Mexico. A Border Patrol agent noticed that the truck's gas tank had tool marks on it and was covered in sand. The agent became suspicious because the tool marks suggested that someone had tampered with the gas tank. When asked where he was going, Zarate-Najera responded that he was going to a pizza restaurant in Alamogordo to pick up a car. The agent then inquired as to who owned the truck, and Zarate-Najera told him that the truck belonged to Zarate-Najera's father. When asked for the truck's registration, Zarate-Najera said he did not have the registration.

The agent then sought and received consent from Zarate-Najera to search the truck. Zarate-Najera and his truck were referred to the secondary inspection point, where another agent inserted a fiberoptic scope into the gas tank and observed a metal box inside the tank. After dismantling the gas tank, the agents

found three metal containers containing 150 pounds of marijuana, with a street value of approximately $73,000. When the Border Patrol agents searched the interior of the truck, they found a sales contract indicating that "Saul and Blanca Sanchez" owned the vehicle.

After his arrest, Zarate-Najera told agents that Saul Sanchez owned the truck and described the vehicle Sanchez was driving. Zarate-Najera also admitted that he knew that the marijuana was in the truck he was driving, but claimed that Sanchez had forced him to drive the load. Shortly thereafter, Sanchez drove through the Border Patrol checkpoint where Zarate-Najera was detained. Agents followed him and stopped him several miles north of the checkpoint. Sanchez agreed to return to the checkpoint with the agents for questioning.

At Zarate-Najera's trial, the government called Sanchez as a witness.[1] Sanchez testified that he had known Zarate-Najera for ten years and that he had asked Zarate-Najera to help him smuggle marijuana through the United States Border checkpoint. Of particular relevance to this appeal is the following exchange between the prosecutor and Sanchez: when the prosecutor asked Sanchez to explain "what arrangements [he] made with Mr. Zarate," Sanchez responded, "I knew Zarate prior to this. We – he showed me to a gentleman that he was dealing with on meth, and he went and introduced me to that man." Tr. of Jury Trial at 75, Appellee's Supp. App. at 35.

---

[1]Sanchez pled guilty and agreed to cooperate with the government.

Defense counsel objected to the testimony, and the court ordered both counsel to approach the bench, where defense counsel moved for a mistrial. The court responded that the statement "came in by mistake, obviously," id., and then stated that the testimony would be stricken from the record. Defense counsel asked the court to instruct the jury to disregard Sanchez's statement. At the conclusion of the bench conference, and without objection, the court instructed the jury as follows: "I'm going to strike this witness' testimony in regard to his most recent response, and I'd ask that you not consider anything he may have said at this point." Id. at 113.

Sanchez went on to testify that the plan called for Zarate-Najera to drive the truck with the marijuana to the pizza restaurant in Alamogordo, from where Sanchez would drive the truck to Memphis, Tennessee, and deliver the marijuana to the buyer. Sanchez said he agreed to pay Zarate-Najera $2000 for his assistance, and that Zarate-Najera, whose family owns a car dealership, would supply the dealer license plates for the truck. Sanchez further testified that, in the early evening of July 23, 2002, Sanchez, driving his own car, and Zarate-Najera, driving the pickup truck containing the marijuana, left El Paso, Texas, and headed north on Highway 54. During the trip, Sanchez' car overheated and he was forced to stop at a gas station to cool down the car for ten minutes. Sanchez then proceeded to the border checkpoint, where he saw that Zarate-Najera's truck had

been stopped. As indicated above, Sanchez was ultimately stopped a few miles north of the check point.

Zarate-Najera testified that he agreed to help Sanchez transport the drugs because Sanchez threatened him. Zarate-Najera further stated that he had borrowed $10,000 from Sanchez, which he was unable to repay, and that, because of this debt, Sanchez beat him and threatened to harm Zarate-Najera and his family if he did not drive the drug load through the checkpoint.

The jury returned a guilty verdict, and Zarate-Najera was sentenced to fifty-one months' imprisonment. He timely appealed. Zarate-Najera's sole argument on appeal is that "for a government witness to allege prior dealings with the Defendant in regard to a much stronger controlled substance than the one alleged in the indictment is such an egregious error and so prejudicial that it is error for the district court not to have declared a mistrial." Appellant's Op. Br. at 6-7.

**DISCUSSION**

"A trial court may appropriately grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired; a decision we review for an abuse of discretion." United States v. Caballero, 277 F.3d 1235, 1242 (10th Cir. 2002). "'Whether a motion for mistrial should be granted is within the discretion of the trial judge because he is in the best position to evaluate the effect of the

offending evidence on the jury.'" United States v. Meridyth, 364 F.3d 1181, 1183 (10th Cir. 2004) (quoting United States v. Laymon, 621 F.2d 1051, 1053 (10th Cir. 1980)). We have further noted that motions for a mistrial "call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case." Id. (further citation omitted). To that end, "where the prosecutor ask[s] a question [a] witness answer[s] in a potentially improper way, . . . [t]he relevant factors . . . include (1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt." Id.

Applying those factors to this case, we easily conclude that the district court did not abuse its discretion in declining to declare a mistrial. First, there is no evidence that the government acted in bad faith in questioning Sanchez. As the district court observed, Sanchez's remark "came in by mistake." Second, the district court gave a curative instruction, specifically telling the jury to disregard Sanchez's remark. "Jurors are presumed to follow their instructions." Id. at 1184 (citing Weeks v. Angelone, 528 U.S. 225, 234 (2000)). Finally, there was ample evidence of Zarate-Najera's guilt. Zarate-Najera admitted he knew he was transporting marijuana; his only defense was that Sanchez coerced him into doing it. Thus, it is highly unlikely that Sanchez's statement had any affect upon the jury.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's denial of Zarate-Najera's motion for a mistrial.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge