FILED
United States Court of Appeals
Tenth Circuit

October 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

RAUL ALVARADO,

        Defendant - Appellant.

No. 11-4142

(D. Utah)

(D.C. No. 2:10-CR-00157-TS-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

Defendant Raul Alvarado appeals his conviction in the United States

District Court for the District of Utah on the charge of encouraging or inducing an

alien to enter or reside in the United States unlawfully. *See* 8 U.S.C.

§ 1324(a)(1)(A)(iv). A superseding indictment charged Defendant with

encouraging and inducing Marcela Vaca-Mendez to enter and reside in the United

States unlawfully and causing her serious bodily injury during and in relation to

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that offense. *See id.* § 1324(a)(1)(B)(iii). Ms. Vaca-Mendez's testimony at trial included a litany of severe abuse by Defendant. At the close of the government's case, however, the district court sua sponte ruled that the bodily injury to Ms. Vaca-Mendez was not during and in relation to the encouraging-and-inducing offense, thus removing the bodily-injury issue from the jury's consideration. The court denied Defendant's motion for a mistrial and the jury found Defendant guilty. On appeal Defendant contends that the district court abused its discretion by failing to declare a mistrial and subjected him to double jeopardy. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.     BACKGROUND

Defendant was originally indicted by a federal grand jury on one count of encouraging or inducing an illegal alien to enter or reside in the United States. *See* 8 U.S.C. § 1324(a)(1)(A)(iv). But a superseding indictment added an allegation that "during and [in] relation to [the offense] Defendant caused serious bodily injury to [Ms. Vaca-Mendez]." Aplt. App., Vol. 3 at 212. The additional allegation subjected Defendant to a possible enhanced sentence under 8 U.S.C. § 1324(a)(1)(B)(iii).

Ms. Vaca-Mendez testified at trial to her relationship with Defendant. She met him in 2004 at a party in her hometown in Mexico. They began a romantic relationship, although his permanent home was in Utah. She became pregnant in November or December 2004. On January 9, 2005, he told her that they were

-2-

leaving for the United States. She obeyed his command because she wanted her child to have a father. During their relationship in Mexico he was verbally abusive, humiliating her. And on three occasions he was physically abusive. On one occasion he grabbed her by the neck at a party. A second incident was at his sister's home, when he threw her on a bed and again grabbed her neck. The third incident was at a party, when he grabbed her by the hair to make her dance with him.

When Defendant and Ms. Vaca-Mendez left for the United States, Defendant told her that he had called some people to help her cross the border and that he would pay them. He drove her and several other passengers to the border town of Nogales where she stayed with one of the other passengers. Eventually she was driven across the border at Mexicali in a truck. Defendant's brother picked her up once she crossed and drove her to Santa Barbara, California, where she joined Defendant, who drove her to Salt Lake City. During the drive Defendant was physically abusive. He refused to let her eat or use the bathroom because he was in a hurry. When they arrived at his home, he told her that she would have to clean his home the next day. She became fatigued and went to bed, but he tried to hit her to make her keep working. On a number of occasions, he beat her while she was in his home. Not long after her arrival she had a miscarriage. She was told not to have intercourse for several weeks, but Defendant beat her and forced her to have sex "nine or ten [times]," Aplt. App.,

Vol. 1 at 38. Defendant did not object to Ms. Vaca-Mendez's testimony about the abuse.

Ms. Vaca-Mendez's testimony about her entry into the United States was corroborated by Defendant's confession. Defendant was interviewed by FBI agent Nancy Pearson. Although she was proficient in Spanish, she questioned Defendant through an interpreter, Gregory Knapp, a detective with the Utah County Sheriff's office who was fluent in Spanish. Pearson and Knapp both testified that Defendant told them that he had paid a human trafficker $2,000 to smuggle Ms. Vaca-Mendez into the United States.

At the close of the government's case-in-chief, Defendant moved for a judgment of acquittal, arguing that the government had failed to produce sufficient evidence that Defendant paid the person who smuggled Ms. Vaca-Mendez into this country or that Ms. Vaca-Mendez suffered serious bodily injury. The district court responded:

> While there is certainly evidence from which the jury could find that the defendant encouraged or induced Ms. [Vaca-]Mendez to enter or reside in the United States, and there is evidence [from] which the jury could find that defendant caused serious[] bodily injury to Ms. [Vaca-]Mendez, there is no evidence from which the jury could find that the defendant caused serious bodily injury during and in relation to the offense of encouraging or inducing an alien to enter or reside in the United States.

*Id.* at 181. It granted the motion for acquittal on the "greater offense of encouraging or inducing an alien to enter or reside in the United States causing

bodily injury," *id.*, Vol. 3 at 283; but it allowed the trial to proceed on the "lesser-included offense of . . . encouraging or inducing an alien to enter or reside in the United States," *id.* at 283–84.

Defendant moved for a mistrial, arguing that he had been unfairly prejudiced by the abuse testimony. But the district court denied the motion.

Defendant testified that he did not arrange to bring Ms. Vaca-Mendez into the United States illegally, that he did not discuss her legal status with her, and that he assumed that she was in the United States legally because she had previously entered and left the country several times and had been married to a United States citizen. He said that he did not learn she had come to the United States until she called him from Santa Barbara and that he and his daughter made a round-trip drive from Salt Lake City to take her there. He asserted that on the trip from California to Utah they stopped several times to eat. He also testified that the law-enforcement officers had misunderstood him during his interview, because he had not admitted that he had arranged to smuggle Ms. Vaca-Mendez but had only provided his general knowledge of human smuggling.

To corroborate his testimony, Defendant called his daughter, who testified that Defendant and Ms. Vaca-Mendez had a normal relationship, that she had accompanied them on the trip from California to Utah, and that Ms. Vaca-Mendez had eaten and used the bathroom on the trip. Defendant also called Ms. Vaca-

Mendez's ex-husband to confirm that she had previously lived with him in California and that he had been a legal resident at the time.

When the district court submitted the case to the jury, it gave the following instruction: "You have heard evidence that Defendant allegedly inflicted injuries upon [Ms. Vaca-Mendez]. You are instructed to disregard all testimony regarding the infliction of physical injuries upon [her] by Defendant. Do not speculate about this." Aplee. Supp. App. at 15. In closing arguments both defense counsel and the prosecutor told the jury not to consider the abuse testimony. The jury convicted Defendant of the lesser-included offense and the court sentenced him to 21 months in prison.

## II. DISCUSSION

### A. Mistrial

Defendant argues that the district court abused its discretion when it allowed the trial to proceed on the lesser-included offense. He asserts that "[Ms.] Vaca-Mendez's testimony was so pulsating and horrifying that it depicted [him] as a monster with an insatiable penchant toward cruelty." Aplt. Br. at 19. He contends that her testimony was too prejudicial for a jury instruction to have mitigated its effect on the jury.

"A trial court may appropriately grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired; a decision we review for an abuse of discretion." *United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir.

-6-

2002). We must consider "(1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement[s] through its instructions to the jury, and (3) whether the improper remark[s] w[ere] inconsequential in light of the other evidence of the defendant's guilt." *United States v. Lamy*, 521 F.3d 1257, 1266 (10th Cir. 2008). In our view, all three factors support the district court's denial of the mistrial motions. First, Defendant does not argue—and the record does not suggest—that the government acted in bad faith in eliciting the abuse testimony. Indeed, Defendant did not object to the testimony when it was given, and he had not argued the ground on which the court decided that the serious-bodily-injury element had not been proved.

Second, the district court gave the jury an unequivocal instruction to disregard the abuse testimony. "We presume that jurors will follow clear instructions to disregard evidence unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Caballero*, 277 F.3d at 1243 (internal quotation marks omitted). In this case the instruction was bolstered by the government's actions: not only did it refrain from relying on the abuse testimony in its closing argument, *see United*

*States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989), but it affirmatively told the jurors to ignore the abuse evidence.[1]

Third, the evidence against Defendant was strong, making the prejudicial testimony—if not inconsequential—at least significantly less consequential. The testimony of Ms. Vaca-Mendez was detailed and damning, and two law-enforcement officers reported that Defendant had admitted that he paid to have her smuggled into the United States. We conclude that the district court did not abuse its discretion in denying Defendant a mistrial. *See United States v. Sanders*, 928 F.2d 940, 942–43 (10th Cir. 1991) (admission of evidence of four uncharged offenses did not deprive the defendant of a fair trial when in each

---

[1] The government began its closing argument by saying:

> Ladies and gentlemen of the jury, there's been a question that's been circulating the first two days of this trial, and I'm sure you've noticed it hasn't been raised today, and that is the issue as to whether or not the defendant, Mr. Alvarado, abused Marcela Vaca-Mendez. As the Court has just instructed you, that is not relevant. That is not something that I'm going to argue about. That is not something that you are even to consider as you deliberate or discuss the facts of this case. In fact, the Court has gone so far as to say don't even speculate about it.
> So the government asks you at this point in time to put all you've heard about that aside and let's focus on the facts that have been presented in support of the crime the defendant has been charged with, that is encouraging or inducing Marcela Vaca-Mendez to enter or reside in this country unlawfully.

Aplt. App., Vol. 2 at 311.

instance the evidence was addressed by a limiting instruction or the defendant failed to object to its admission).

Defendant's reliance on *Lawrence v. United States*, 357 F.2d 434 (10th Cir. 1966) is misplaced. In that case the defendant was convicted of bank robbery. *See id.* at 434. One of his codefendants, who had previously pleaded guilty, "testified that [the defendant] was not involved in the robbery and had no knowledge of it." *Id.* at 435. To impeach the codefendant, the government read a statement by his attorney at sentencing that put the blame for planning the robbery on the defendant. *See id.* The trial court initially admitted the attorney's statement, but later ruled it inadmissible. *See id.* We held that "[t]he contents of the statement are so damaging to [the defendant] on *a crucial issue* that it must be held that the error was not cured by the trial court's admonition." *Id.* at 437 (emphasis added). Our case is different. The abuse testimony was *not* crucial on whether Defendant had encouraged or induced Ms. Vaca-Mendez to enter the United States. Indeed, the district court ordered acquittal on the serious-bodily-injury element precisely because the alleged abuse was unrelated to the smuggling offense.

The other case relied on by Defendant, *Maestas v. United States*, 341 F.2d 493 (10th Cir. 1965), is more difficult to distinguish. Perhaps it would have been decided differently under our *Lamy* framework. Suffice it to say that on the facts of this case, we see no abuse of discretion by the district court.

### B.    Double Jeopardy

Defendant argues that he was subjected to double jeopardy when his trial proceeded after the district court had ordered his acquittal on the charge in the superseding indictment.  He asserts that the indictment "only sought enhanced sentencing factors," Aplt. Br. at 15, and that the addition of the serious-bodily-injury element did not create a greater offense of which the crime of conviction was a lesser-included offense.  Because there was only one offense, he argues, the acquittal on the charge in the indictment barred a trial on the offense of conviction.  *See United States v. Hunt*, 212 F.3d 539, 546 n.4 (10th Cir. 2000) (when offense can be committed in two ways, acquittal on charge of committing offense by one means bars later prosecution for committing offense by the other means).

Because Defendant failed to raise the double-jeopardy issue below, we review for plain error.  *See United States v. Contreras*, 108 F.3d 1255, 1261 (10th Cir. 1997).  "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).  The district court's purported error fails to meet this standard.  The problem is with the second requirement.  "An error in a ruling is 'plain' only if the ruling violates 'well-settled law.'"  *United States v. Baum*, 555 F.3d 1129, 1135–36 (10th Cir. 2009).  "When no authority from the

Supreme Court or this circuit would compel a determination that there was error and there is contrary authority in other circuits, the error can rarely be plain." *Id.* Neither the Supreme Court nor this circuit has addressed whether the "injury factors" in 8 U.S.C. § 1324(a)(1)(B)(iii) and (iv) are "sentencing factors" or "elements" of a greater-aggravated offense. The only sister circuit to address this issue held that "[i]t is plain that, following *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], the 'injury factors' in 8 U.S.C. §§ 1324(a)(1)(B)(iii) and (iv) are 'elements' of 'greater aggravated offenses' . . . rather than mere 'sentencing factors' . . . ." *United States v. Williams*, 449 F.3d 635, 644 (5th Cir. 2006). "Because only one court has addressed this issue and reached a result contrary to Defendant's position on appeal, he fails to make the necessary showing . . . ." *United States v. Johnson*, 183 F.3d 1175, 1179 (10th Cir. 1999). The only instance in which "[w]e have recognized plain error despite contrary authority in other circuits [is] in the context of an unambiguous statutory command." *Baum*, 555 F.3d at 1136. Such is not the case here.

## III. CONCLUSION

We AFFIRM Defendant's conviction.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge
