**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

MIKE MEIENBERG,

        Defendant-Appellant.

No. 00-1390

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-CR-179-D)

---

Sean Connelly, Assistant United States Attorney, District of Colorado, (Thomas
L. Strickland, United States Attorney, District of Colorado; Craig Wallace,
Assistant United States Attorney, District of Colorado; Tim Neff, Assistant
United States Attorney, District of Colorado, with him on the brief), Denver,
Colorado, for Plaintiff-Appellee.

Paula M. Ray, Denver, Colorado, for Defendant-Appellant.

---

Before **BRISCOE**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

Defendant Michael Meienberg appeals his convictions in the United States District Court for the District of Colorado for one count of sale of a firearm to an underage person, 18 U.S.C. § 922(b)(1), fourteen counts of sale of a firearm in violation of state law, 18 U.S.C. § 922(b)(2), and one count of conspiracy to sell firearms in violation of state law, 18 U.S.C. § 371. Jurisdiction to consider Defendant's appeal arises under 28 U.S.C. § 1291. Defendant argues that all or some of his convictions should be overturned because of (1) prosecutorial misconduct in closing arguments, (2) error by the district court in allowing unauthenticated computer printouts into evidence, and (3) the facial unconstitutionality of 18 U.S.C. § 922(b)(2). Upon review, this court **affirms** the convictions.

# II. DISCUSSION

### A. Prosecutorial Misconduct

During closing arguments the following exchange occurred:

PROSECUTOR: Now, I told you in my opening we had that burden [to prove the guilt of Defendant beyond a reasonable doubt], didn't I. Of course we do. I acknowledge it. I acknowledge it freely. That's how our system works. Well, I believe we've met the burden.
DEFENSE COUNSEL: Objection, Your Honor that's improper.
PROSECUTOR: I believe the government has –
THE COURT: Hold on.
DEFENSE COUNSEL: Objection, Your Honor, improper to state what he believes.

-2-

PROSECUTOR: All right.  Let me restate.  I believe the government has met its burdens.  I'm not asking to believe me personally, I'm asking you to believe what the evidence shows.
DEFENSE COUNSEL: Still improper, Your Honor.
THE COURT: Sustained.

The government concedes that misconduct occurred when the prosecutor expressed his personal belief as to the Defendant's guilt.  *See United States v. Young*, 470 U.S. 1, 7-8 (1985) (discussing the impropriety of prosecutors expressing their personal beliefs).  Such comments can leave the impression that the prosecutor is basing his conclusion on evidence not presented to the jury and also may induce the jury to rely on the prosecutor's personal conclusion rather than an independent review of the evidence.  *See id.*

In some circumstances, prosecutorial misconduct may be so severe that a new trial is required.  *See United States v. Gabaldon*, 91 F.3d 91, 94 (1996).  This court reviews the denial of a motion for mistrial for an abuse of discretion.  *See id.*  Although Defendant quickly objected to the prosecutor's conduct, Defendant did not request a mistrial or seek any further relief.  "Where there has been no motion for a mistrial or new trial, the district court has not exercised its discretion, and therefor it is meaningless to look for an abuse of discretion."  *Id.*  In such circumstances, the

> prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict.  In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of

-3-

the misconduct, and the role of the misconduct within the case . . . [T]o warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.

*Id.* (quotation omitted). In this case, the prosecutor's conduct was not "flagrant enough to influence the jury to convict on grounds other than the evidence presented." *Id.* (quotation omitted). The prosecutor eliminated much of the prejudice to Defendant by explaining that "I'm not asking to believe me personally, I'm asking you to believe what the evidence shows." In addition, the district court instructed the jury that arguments of counsel were not evidence. Thus, while this court confirms its disapproval of a prosecutor asserting his personal belief as to a defendant's guilt, the impact of the prosecutor's improper statements in this case were negligible. *See id.* at 95.

**B. Computer Documents**

18 U.S.C. § 922(b)(2) makes it a federal crime to sell a firearm in violation of state law. At the time of the events underlying this lawsuit, Colorado required gun dealers to perform certain tasks before selling a handgun. *See* Colo. Rev. Stat. § 12-26.5-103 (repealed 1999). Dealers were required to contact the Colorado Bureau of Investigation (the "Bureau") for purposes of conducting an instant background check on the potential purchaser and, if the purchaser was approved, dealers were required to record the approval number for the transaction. *See id.* § 12-26.5-103(2)(d)(I)(A), (B) (repealed 1999).

-4-

In order to demonstrate that Defendant had often neglected to contact the Bureau for an instant background check and instead recorded phony approval numbers, the government introduced the printouts of computerized records reflecting the approval numbers issued by the Bureau to Defendant's firearms business. Defendant objected to the printouts based on a lack of authentication. The district court overruled the objection, allowing the printouts into evidence. Defendant renews his authentication challenge on appeal. "Evidentiary decisions, such as findings concerning the authenticity of a document, rest within the sound discretion of the district court and are reviewed for abuse of discretion." *United States v. Henry*, 164 F.3d 1304, 1309 (10th Cir. 1999). There is an abuse of discretion when the district court's decision is "arbitrary, capricious, whimsical, or unreasonable." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (quotation omitted).

Before evidence is admissible it must be authenticated. *See* Fed. R. Evid. 901(a). This requirement is met by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* "The rationale for the authentication requirement is that the evidence is viewed as irrelevant unless the proponent of the evidence can show that the evidence is what its proponent claims." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991).

Defendant argues that, in order to authenticate, the government was required to demonstrate the accuracy of the information contained in the printouts. Because the government's witness could not verify the accuracy of the information, Defendant argues that the records were not authenticated. Defendant relies on Rule 901(b)(9) of the Federal Rules of Evidence. Rule 901(b) provides numerous nonexhaustive examples of proper authentication. Rule 901(b)(9), one of these examples, states as follows:

> **(9) Process or system.** Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

Defendant's argument is without merit. In order to authenticate the printouts, the government had only to present "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The computer printouts reflected the Bureau's record of approval numbers assigned to Defendant's firearms business. The government's witness testified to this fact, thus satisfying the minimal authentication requirement: "[The computer printouts are] a record of the transaction[] number[s] issued for [Defendant's business], all the transactions during each separate exhibit is a month period of transactions issued [by the Bureau to Defendant's business]. *See* Fed. R. Evid. 901(b)(7) (providing that a public record can be authenticated by evidence that the record "is from the public office where items of this nature are

-6-

kept"); *see also* Fed. R. Evid. 901, Advisory Committee Notes , 1972 Proposed Rules, note to Subdivision (b), Example 7 ("Public records are regularly authenticated by proof of custody, without more. The example extends the principle to include data stored in computers and similar methods . . . ." (citation omitted)). "Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility." *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

Defendant's reliance on Rule 901(b)(9) is misplaced. The computer printouts were not the result of a "process or system used to produce a result"; they were merely printouts of preexisting records that happened to be stored on a computer. In any event, the government did offer circumstantial evidence that the computer printouts accurately depicted the approval numbers issued to Defendant's business. Thus, the district court did not abuse its discretion in allowing the printouts into evidence.

### C. Constitutionality of § 922(b)(2)

Section 922(b)(2) provides:

> It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—[] any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of

any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance[.]

Defendant claims § 922(b)(2) is unconstitutional, advancing two arguments. First, Defendant claims that § 922(b)(2) exceeds Congress' power to regulate interstate commerce. Second, Defendant maintains that § 922(b)(2) runs afoul of the federalism concerns expressed in *Printz v. United States*, 521 U.S. 898 (1997). It appears that no other court has addressed these questions.

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). First, Congress can regulate the use of the channels of interstate commerce. Second, Congress can regulate the instrumentalities of interstate commerce and persons or things in interstate commerce. Finally, Congress can regulate those activities that substantially affect interstate commerce. *See id.* at 558-59.

Section 922(b)(2) regulates firearms transactions; such transactions are, by their nature, commercial in character. *Compare id.* at 551-68 (striking down 18 U.S.C. § 922(q), which criminalized mere possession of a firearm within a place the individual reasonably knew was a school zone). To the extent the statute applies to transactions across state lines, the affect on interstate commerce is obvious. *See United States v. Wilks*, 58 F.3d 1518, 1521 (10th Cir. 1995) ("The

interstate flow of machineguns not only has a substantial effect on interstate commerce[,] it *is* interstate commerce." (quotation omitted)).  As explained below, even those firearms transactions which take place between a dealer and buyer within the same state substantially affect interstate commerce.

In *Huddleston v. United States*, the Supreme Court addressed 18 U.S.C. §§ 922(a)(6) and (d)(1).  *See* 415 U.S. 814, 833 (1974).  These statutes make it a crime for any person to lie to a licensed gun dealer in connection with the acquisition of a firearm and also make it a crime for a gun dealer to knowingly sell a firearm to a person convicted of a crime punishable by imprisonment for more than one year.  *See id.* at 815-17.  The Supreme Court stated in *Huddleston*: "Congress intended, and properly so, that §§ 922(a)(6) and (d)(1) . . . were to reach transactions that are wholly intrastate, as the Court of Appeals correctly reasoned, on the theory that such transactions affect interstate commerce." *Id.* at 833 (citation and quotation omitted).

Section 922(b)(2), like the statutes under consideration in *Huddleston*, applies to wholly intrastate firearm transactions as well as interstate firearms transactions.  In considering Congress' constitutional power to regulate intrastate transactions, the aggregate interstate affect of the regulated intrastate transactions is considered.  *See Wickard v. Filburn*, 317 U.S. 111, 127-28 (1942).  Well-documented congressional findings indicate that the market for firearms is a

national market.  *See, e.g.*, *Huddleston*, 415 U.S. at 833; *Wilks*, 58 F.3d at 1521.

Under these circumstances, the aggregate of intrastate firearms transactions has a

substantial affect on interstate commerce.  *United States v. Cardoza*, 129 F.3d 6,

13 (1st Cir. 1997) ("[T]he supply and demand for handguns in any given state will

'substantially affect' interstate commerce in handguns by causing the weapons to

move across state lines.").  Because firearms transactions, even those which are

purely intrastate, substantially affect interstate commerce in firearms, § 922(b)(2)

is a valid exercise of Congress' power to regulate interstate commerce.

Defendant also claims that § 922(b)(2), by incorporating state law into the

definition of a federal crime, runs afoul of the federalism principles expressed in

*Printz*.  The Supreme Court's decisions in *Printz* and *New York v. United States*

stand for the principle that the federal government cannot "commandeer" the

executive and legislative branches of state governments into service for the

purpose of implementing federal law.  *See Printz*, 521 U.S. at 933; *New York v.*

*United States*, 505 U.S. 144, 166, 187 (1992).

The federalism concerns expressed in *Printz* and *New York* do not apply to

§ 922(b)(2).  By making a violation of state law a federal crime, the federal

government has not commandeered the states into enforcing federal policy.  Quite

to the contrary, § 922(b)(2) can be seen as a cooperative effort by the federal

government to assist the states in enforcing state policies.  There are both old and

recent examples of such cooperative efforts between the federal government and the states. *See* 18 U.S.C. § 1955(b)(1)(i) (defining an "illegal gambling business" as one which is in violation of state law); Leonard D. White, The Federalists 401, 403 (1956) (cataloging historic examples of cooperation between the states and federal government). Because § 922(b)(2) does not involve an attempt to use the states as mechanisms to enforce federal regulation, the political accountability concerns expressed in both *Printz* and *New York* do not apply. *See Printz*, 521 U.S. at 929-30; *New York*, 505 U.S. at 168-69.

Defendant notes that the purpose of § 922(b)(2) was to "encourage States to publish and circulate statewide and local firearms regulations." H.R. Rep. No. 1577 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4419-20. It is well established, however, that Congress can use its valid constitutional powers to encourage particular behavior from the states. In *New York*, the Supreme Court stated:

> This is not to say that Congress lacks the ability to encourage a State to regulate in a particular way . . . . Our cases have identified a variety of methods, short of outright coercion, by which Congress may urge a State to adopt a legislative program consistent with federal interests.

505 U.S. at 166. To the extent that § 922(b)(2) seeks to encourage states to pass firearms laws, it does so in a manner far short of coercion. Thus, it does not matter that the purpose of § 922(b)(2) might be to encourage particular behavior from the states. Defendant's federalism arguments are rejected.

## III. CONCLUSION

For the reasons stated above, Defendant's convictions are **AFFIRMED**.