**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOE MARIO VELARDE, a/k/a Paul
Tafoya, a/k/a Jose Velarde,

    Defendant-Appellant.

No. 05-4213

(D.C. No. 2:04-CR-457-TC)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE** and **HARTZ,** Circuit Judges, and **KRIEGER,** District Judge.[**]

Joe Mario Velarde appeals his jury conviction of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Velarde contends

that the district court abused its discretion when it denied his motion for a mistrial

after two government witnesses made several prejudicial remarks about his

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Marcia S. Krieger, United States District Judge for the
District of Colorado, sitting by designation.

criminal history and dangerous character. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm Velarde's conviction.

I.

On May 23, 2003, at around three o'clock in the morning, Deputy Nathan Clark initiated a traffic stop of a gold Honda Accord for improper registration. Vol. III at 3-4. As he approached the vehicle, Deputy Clark noticed three occupants: a male driver, later identified as Troy Richards; a female in the front passenger seat, later identified as Danielle Corbin; and a male in the right rear passenger seat, later identified as Velarde. Id. at 5, 16. Deputy Clark also observed a blue tent bag on the floorboard behind the driver's side seat, next to Velarde's feet. Id. at 5.

Deputy Clark returned to his patrol car to have dispatch run a background check on Richards. While Deputy Clark was waiting for the results, he observed Velarde acting "extremely nervous" and "very fidgety." Id. at 8. Several minutes later, Deputy Clark learned that Richards had an outstanding warrant for his arrest, as well as a "violent tendencies" warning. Id. at 6. Meanwhile, Deputies Kenneth Callahan and Shawn Fausett arrived to assist Deputy Clark with the traffic stop. Id. at 6-7. Deputy Callahan testified that from his patrol car, he saw Velarde fidgeting around in the back seat and acting nervous. Vol. IV at 5.

After the background check on Richards was completed, Deputy Clark

walked back to the driver's side of the vehicle, while Deputies Callahan and Fausett approached the passenger side of the vehicle. Vol. III at 8. According to Deputy Callahan, he noticed a bag on the seat next to Velarde and that Velarde's hand was on the bag. Vol. IV at 6, 23. Deputy Callahan testified that he then looked away from Velarde as Deputy Clark arrested Richards after ordering Richards to get out of the vehicle. Vol. III at 8, Vol. IV at 6. Deputy Callahan recalled that when he looked back at Velarde, he noticed that the bag was on the floorboard behind the driver's seat, within six inches of Velarde's feet. Vol. IV at 6-7. Soon thereafter, Deputies Callahan and Fausett obtained Velarde's and Corbin's identification and asked them to step out of the vehicle. Vol. III at 9.

Deputy Clark searched the vehicle incident to Richards' arrest. Id. In the backseat of the car, on the floorboard behind the driver's seat, Deputy Clark recovered the bag that he had noticed earlier in the traffic stop. Id. at 9-10. Deputy Clark testified that inside the bag he "found a blue and white bandana, a pair of black athletic gloves, and a 12 gauge sawed-off shotgun that had been wrapped in a blue blanket." Id. at 10. Deputy Clark also recalled that the "gun, both the stock and the handle, were wrapped in blue electrical tape." Id. at 11. The officers arrested Velarde for possession of the sawed-off shotgun after performing a background check and learning that Velarde had a prior felony conviction.

Both Richards and Corbin testified that earlier in the evening Velarde

-3-

arrived at Richards' residence carrying at least two duffel bags. Vol. IV at 41-42, 97. They recalled that at Richards' residence, Velarde had pulled out a sawed-off shotgun from a smaller bag and showed it to them. Id. at 43, 60, 97-98. Corbin testified that when Velarde got inside Richards' vehicle later that night, Velarde placed the bag with the shotgun in it on the seat next to him. Id. at 99. Further, Richards testified that during the traffic stop he asked Velarde if Velarde had brought the shotgun with him, and Velarde responded affirmatively. Id. at 44-45. Both Richards and Corbin also confirmed that Velarde often wore blue clothing, including a blue bandana.[1]

Based on the above testimony, the jury found Velarde guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), but not guilty of possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d).[2] The district court sentenced Velarde to 92 months'

---

[1]  Before trial, the district court ruled that the government could not present evidence about Velarde's gang affiliation to connect him to the gun and the color blue. Vol. II at 4. Rather, the district court concluded that the government could present evidence demonstrating that Velarde liked the color blue and that he often wore a blue bandanna or blue clothing. Id. at 5-6.

[2]  The district court instructed the jury that to find Velarde guilty for being a felon in possession of a firearm, the government had the burden to prove: (1) he was previously convicted of a felony; (2) he knowingly possessed a firearm after the conviction; and (3) the firearm affected interstate commerce. Vol. I, Doc. 59, Instr. No. 12. Additionally, the district court instructed the jury to that to convict Velarde for possession of a sawed-off shotgun, the government had to prove: (1) Velarde knowingly possessed a firearm; (2) Velarde knew the firearm had a barrel length of less than 18 inches or had an overall length of less than 26 inches; (3)

(continued...)

imprisonment, followed by a term of 36 months' supervised release.

II.

Velarde contends that the district court abused its discretion when it denied his motion for a mistrial which was based upon the unsolicited remarks of Deputy Clark and Deputy Callahan during their trial testimony. Specifically, Velarde argues that Deputy Clark and Deputy Callahan made prejudicial remarks about his criminal history and dangerous character that violated his right to a fair trial.

Velarde first argues that the jury likely convicted him of being a felon in possession of a firearm based on Deputy Clark's statement at trial that Velarde "had an extensive criminal history, including weapons violations." Vol. III at 9. The testimony that is relevant to this argument occurred during the prosecutor's direct examination of Deputy Clark on the first day of Velarde's trial:

Q. Were . . . [Corbin and Velarde] eventually taken out of the car?

A. Yes, they were. State law states that I have the right to search a vehicle incident to arrest. The feeling of the warrant [for Richards' arrest]–the nature of the warrant, I felt there was a possibility of maybe weapons or drugs in the car, so the two passengers were asked to exit.

---

[2](...continued)
the firearm was or could readily have been put in operating condition; and (4) the firearm was not registered to Velarde. Id. at Instr. No. 17. At trial, the parties stipulated to the shotgun's measurements and to the fact that the shotgun had affected interstate commerce. Vol. IV at 134. Further, the parties stipulated that Velarde had been previously convicted of a felony. Id.

Beforehand, Callahan and Fausett had returned to their cars after receiving their information, and Callahan had notified me that the rear passenger, Joseph Velarde, had an extensive criminal history, including weapons violations.

Mr. Donaldson: Objection, Your Honor. Move to strike.

The Court: Sustained. And disregard that.

Id.

Additionally, Velarde argues that portions of Deputy Callahan's testimony portrayed him as an individual who was "dangerous and likely to use the firearm." Aplt. Br. at 9. The testimony at issue here occurred on the second day of trial during the prosecutor's re-direct examination of Deputy Callahan:

Q. You were asked about . . . what you did with this information that you had about the bag being on the seat. When was it that you told officer Clark about this information?

A. About the bag being on the seat?

Q. Yes.

A. It was after he had found the firearm that was in the vehicle. I made a statement to him that–I believe I said, "I think it was a good thing that we came by tonight because I think you could have been taken out tonight."

Mr. Donaldson: Objection. Move to strike.

The Court: Sustained.

Q. Just answer the questions I ask you.

A. Okay.

. . .

-6-

Q. Did you clearly see the bag on the back seat?

A. Yes.

Q. And did you see the defendant's hands on that bag?

A. Yes, one hand.

Q. You were asked about how that's possible when you did not write a report. How is it that you remember that?

A. When you have big situations like this where somebody's life could have been taken at anytime–

Mr. Donaldson: I'm going to object, Your Honor.

The Court: Sustained . . . .

Vol. IV at 22-23.

Immediately after the district court's ruling, the district court sua sponte excused the jury. Id. at 23. Velarde's defense counsel then moved for a mistrial based on Deputy Clark's and Deputy Callahan's remarks. Id. at 24. The prosecutor responded that Deputy Callahan's remarks were completely unexpected and unresponsive to his questions, and were properly stricken from the record. Id. at 24-25. The prosecutor added that, if necessary, a cautionary instruction could be provided to the jury. Id. at 25. The district court then denied the motion for a mistrial, and instructed the government's witnesses not to make inflammatory comments and to answer only the questions asked of them. Id. When the jury returned to the courtroom, counsel for Velarde did not request a cautionary instruction and the district court did not provide one. Id. Deputy

Callahan completed his testimony without further objection. Id.

On appeal, Velarde asserts that the officers' testimony likely influenced the outcome of his trial because of the weak and contradictory evidence the government presented to establish that he knowingly possessed the shotgun. Velarde also points to the inconsistent verdicts the jury rendered in his case as further evidence of the effect the officers' prejudicial remarks had upon the jury.

We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Crockett, 435 F.3d 1305, 1317 (10th Cir. 2006) (citing United States v. Meienberg, 263 F.3d 1177, 1180 (10th Cir. 2001)). "A mistrial may only be granted when a defendant's right to a fair and impartial trial has been impaired." United States v. Kravchuk, 335 F.3d 1147, 1155 (10th Cir. 2003) (citation omitted). When a prosecutor asks a question and the witness answers in an improper way, we must evaluate: "(1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt." United States v. Meridyth, 364 F.3d 1181, 1183 (10th Cir. 2004) (citation omitted); see also United States v. Caballero, 277 F.3d 1235, 1244 (10th Cir. 2002) (stating that to determine "whether an improper reference to a defendant's prior conviction" requires a mistrial, we must evaluate whether the error had a substantial influence on the jury's decision in light of all the evidence presented

-8-

against the defendant at trial) (citations omitted); <u>United States v. Sloan</u>, 65 F.3d 861, 865 (10th Cir. 1995) (explaining that an improper reference to a defendant's criminal record is harmless where the evidence against the defendant is overwhelming) (citation omitted). In conducting our review, we bear in mind that the district court "is in the best position to evaluate the effect of the offending evidence on the jury." <u>United States v. Laymon</u>, 621 F.2d 1051, 1053 (10th Cir. 1980) (citations omitted).

The non-responsive answers given by Deputy Clark and Deputy Callahan to the prosecutor's questions were clearly improper and arguably intended to inflame the jury. Deputy Clark's reference to Velarde's "extensive criminal history, including weapons violations" is particularly troubling during a criminal trial where the jury was to determine whether Velarde was guilty of being a felon in possession of a firearm. Nevertheless, we cannot conclude that the district court's denial of Velarde's motion for a mistrial was an abuse of discretion.

First, there is no evidence in the record to show that the prosecutor acted in bad faith. Although we may question whether the prosecutor sufficiently counseled Deputies Clark and Callahan prior to trial to limit their answers to the questions posed, it is evident that the prosecutor's questions were not phrased to elicit the challenged testimony.

Second, the district court properly ruled on the admissibility of the officers' inflammatory statements, and then adequately limited the effect of the statements

through its instructions to the jury. The district court sustained defense counsel's objection to Deputy Clark's testimony. While the district court did not provide a model curative instruction, the district court immediately instructed the jury to "disregard that." The district court also sustained defense counsel's objections to Deputy Callahan's testimony. Although the district court did not provide a curative instruction, the district court admonished the government's witnesses out of the hearing of the jury to respond only to the prosecutor's questions and to avoid further inflammatory remarks.[3] And lastly, the district court instructed the jury before deliberations to entirely disregard any evidence "to which an objection was sustained by the court, and any evidence ordered stricken by the court[.]" Vol. I, Doc. 59, Instr. No. 5. We must presume that the jury followed this instruction. See Caballero, 277 F.3d at 1243 ("We presume that jurors will follow clear instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a

---

[3] We note that defense counsel did not request a curative instruction when he moved for a mistrial, despite the prosecutor's suggestion to the district court that such an instruction would be appropriate. See Caballero, 277 F.3d at 1245 (concluding that the district court did not abuse its discretion in denying a motion for mistrial based in part on the defense counsel's failure to "ask the court to strike the [prosecutor's] offending remark or issue a limiting jury instruction, though both the prosecution and the court suggested such a course"). Here, we do not fault defense counsel for failing to request a curative instruction. As both counsel acknowledged at oral argument before this court, defense counsel's failure to ask for an instruction was likely the result of defense counsel's tactical decision not to draw additional attention to the officers' testimony.

strong likelihood that the effect of the evidence would be devastating to the defendant.") (internal quotation marks omitted); <u>United States v. Massey</u>, 48 F.3d 1560, 1569 (10th Cir. 1995) ("Cautionary instructions are ordinarily sufficient to cure alleged prejudice.") (citations omitted).

Third, and most importantly, we are confident that any prejudice to Velarde was harmless because the evidence demonstrating Velarde's possession of the sawed-off shotgun was overwhelming, and the jury considered other evidence regarding Velarde's criminal history and dangerous character. Testimony from both Deputy Clark and Deputy Callahan provided direct and circumstantial evidence to establish Velarde's possession of the sawed-off shotgun. During the traffic stop, Deputy Clark noticed the tent bag with the shotgun on the floorboard behind the driver's seat, in close proximity to Velarde. Deputy Clark also found the tent bag in the same location during his search of the vehicle. Deputy Callahan testified that he initially observed the tent bag on the seat next to Velarde, with Velarde's hand on the bag. Deputy Callahan stated that he looked away to watch Deputy Clark arrest Richards, and that when he looked back at Velarde, the bag was on the floorboard next to Velarde's feet.[4]

Moreover, Richards' and Corbin's testimony provided a strong link

---

[4] We do not agree with Velarde's assertion that Deputy Callahan's testimony about the position of the bag in the vehicle contradicts Deputy Clark's testimony. It is reasonable to assume that Deputy Clark was not focused on the bag's location when he was involved in the arrest of Richards.

between Velarde and the sawed-off shotgun. Richards and Corbin testified that Velarde arrived earlier at Richards' residence carrying at least two duffel bags, and that Velarde showed them that he had a shotgun in a smaller bag. Corbin testified that when they left Richards' residence in the Honda Accord, Velarde took the bag containing the shotgun with him. Similarly, Richards testified that he asked Velarde during the traffic stop if Velarde had the shotgun with him, and that Velarde answered that he did. Lastly, both Richards and Corbin confirmed that Velarde liked to wear the color blue, including blue bandanas. The evidence established that the shotgun was wrapped in blue electrical tape, was covered in a blue blanket, and was found in a blue tent bag which also contained a blue and white bandana. While the credibility of Richards and Corbin was challenged by Velarde, the weight to be given to their testimony was within the province of the jury.

We are also convinced that the deputies' statements were harmless in light of other evidence presented to the jury about Velarde's criminal history and dangerous character. While Deputy Clark improperly referred to Velarde's "extensive criminal history," we point out that the parties' stipulated for purposes of the felon in possession of a firearm count that Velarde had been previously convicted of a felony. Further, even before Deputy Callahan's challenged statements about Velarde's dangerous character were objected to at trial, Deputy Clark testified that when he arrested Velarde, Velarde made the following

inflammatory statement to him: "Had the gun been mine, it would have been strapped, and I would have drawn mine on you had you drawn your weapon, and I would have drawn mine a lot quicker than you would have drawn yours. I'm not afraid to die." Vol. III at 16.

Finally, in further support of his contention that the challenged testimony of Deputy Clark and Deputy Callahan prejudiced his trial, Velarde emphasizes the inconsistent verdicts reached in his case and speculates about the jury's reasoning underlying those verdicts. This argument is not compelling. It is well established that an inconsistent verdict is not a sufficient reason for setting a verdict aside. See, e.g., United States v. Powell, 469 U.S. 57, 64-66 (1984); United States v. Harris, 369 F.3d 1157, 1168 (10th Cir. 2004); United States v. Jaynes, 75 F.3d 1493, 1508 (10th Cir. 1996); United States v. Kendall, 766 F.2d 1426, 1433 (10th Cir. 1985). Moreover, the jury's inconsistent verdicts arguably support the conclusion that the officers' remarks did not violate Velarde's right to a fair trial. Had the jury been truly swayed by the officers' remarks, they would have more likely convicted Velarde of both charges. In light of the prosecutor's lack of bad faith, the district court's instructions to the jury, the overwhelming evidence to support Velarde's conviction, and the other evidence presented to the jury concerning his criminal history and dangerous character, we conclude that the

district court's denial of Velarde's motion for a mistrial was not an abuse of discretion.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge